IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| ROBERT STEVEN TUTTLE ) | |
| ) | |
| v. ) | No. 2:13-0045 |
| ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:     The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 18), to which defendant has responded (Docket Entry No. 21). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 13),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff filed his applications for benefits in August 2009, alleging disability onset as of May 31, 2008. (Tr. 22) His applications were denied at the initial and

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of his case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on September 13, 2011, when plaintiff appeared with counsel and gave testimony. (Tr. 36-48) At the conclusion of the hearing, the ALJ took the matter under advisement until October 31, 2011, when he issued a written decision finding plaintiff not disabled. (Tr. 22-28) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through May 31, 2008.

2. The claimant has not engaged in substantial gainful activity since May 31, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 15, 1978 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability

because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24-28)

On April 16, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

For an extensive summary of the medical evidence in this case, the Court is referred to plaintiff's brief, Docket Entry No. 19 at pp. 2-16.

For purposes of framing the two issues raised by plaintiff in this appeal, it boils down to this: plaintiff suffered a lower back injury in 2008, leading to a diagnosis of lumbar degenerative disc disease based on x-ray and MRI results which are clinically mild (Tr. 258,

260, 313, 314),[2] but which have led plaintiff to seek relief from chronic pain complaints that are largely out of proportion to the clinical findings, through physical therapy, epidural steroid injection therapy, and narcotic medication management.

As to the non-medical evidence, the ALJ summarized plaintiff's testimony as follows:

> The claimant asserts that he is no longer able to work because of constant back pain that prevents him from lifting significant amounts of weight. According to the claimant, his physicians have told him that he needs back surgery, but feel he is too young for it. As a result, the claimant is reliant on pain medication for his constant back pain, which he rates as a seven on a scale of one to ten. The claimant estimates that he can walk for a total of fifty yards at a time, stand for thirty to forty-five minutes and lift a maximum of five pounds because of his spinal condition. The claimant indicated further that pain from his back radiates into his leg and causes numbness after fifteen minutes of sitting. The claimant also cited chest pain, for which he takes nitroglycerin, and blurry vision, for which he requires corrective lenses, as limiting his ability to function.

(Tr. 26)

Plaintiff also introduced into evidence his childhood school records (Tr. 222-49), which showed that plaintiff received special education services in the Language Arts curriculum (though he appears to have graduated high school with a regular diploma after passing the Tennessee Competency Test in Language his senior year (Tr. 235)) due to testing which showed difficulties with visual tracking, short term memory function, and attention and concentration span, as well as basic reading skills which were in the lower extreme (1st

---

[2] In May 2008, the films revealed "mild scoliosis" and "narrowed intervertebral disc space at L5-S1" (Tr. 258) with "mild central disc herniation at L5-S1" and "[f[ocal bulge of disc material ... at L4" (Tr. 260); and, by December 2009, "mild scoliosis of the lumbar spine, convexity to the left" (Tr. 313) and "[m]ild degenerative disc desiccation at L5-S1" with a "mild, broad-based, posterior disc bulge at L4-5 and L5-S1," without "evidence of a herniated disc of central canal stenosis[.]" (Tr. 314)

percentile) of the population.

## III. Conclusions of Law

### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also

Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

After giving extensive treatment to his summary of the medical evidence of record, plaintiff briefly argues that, based on that evidence, the ALJ erred in his evaluation of plaintiff's subjective pain complaints and in his failure to discuss plaintiff's "inability to read and comprehend." (Docket Entry No. 19 at 18)

First, plaintiff contends that since the objective medical record documents an underlying condition that can cause lower back pain, and since his complaints of pain have been consistent and have not been relieved by epidural steroid injections or physical therapy, it was error for the ALJ to reject his claim of disabling back pain. However, plaintiff acknowledges that discounting credibility is "appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Id. at 17. That is

7

exactly what happened here:

> With respect to the claimant's back pain, as discussed previously, diagnostic testing indicates that the claimant's spinal condition is fairly mild. There is no evidence of neural impingement or stenosis. (See Exhibit 5F). Further, the claimant's failure to cooperate with a consultative physical examination by Dr. Keown detracts from his credibility. Specifically, Dr. Keown noted that the claimant indicated that he could not dorsiflex more than 20 degrees during formal testing, but was later observed dorsiflexing 90 degrees without signs of distress or difficulty. (See Exhibit 4F). The claimant's strength and gait were described as normal and he was neurologically intact in Dr. Keown's examination. Further, the claimant's assertion that his doctors told him he needs spinal surgery is not supported by the record. On the contrary, his physician, Dr. Edward Mackey, indicated that the claimant's back pain is benign, that there is nothing to be done from a surgical standpoint and that the claimant should be able to return to work duty without risk of damaging anything. (See Exhibit 17F). Dr. Mackey went on to note that the claimant's most serious challenge was to abstain from pain medication and learn to manage his benign pain without use of narcotics. Consequently, the undersigned finds that the claimant's alleged back disorder does not interfere with his ability to perform the full range of medium exertion.

(Tr. 26-27) The ALJ's credibility finding -- which is due "great weight and deference" on judicial review, Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003) -- is clearly supported by substantial evidence.

Second, plaintiff contends that the ALJ erred in failing to account for his inability to read or comprehend. However, despite plaintiff's testimony that he can only read short words (Tr. 44) and the documentation of plaintiff's poor academic performance on reading and language testing, the record in no way supports the notion that plaintiff is illiterate or that any deficit in reading ability would affect his ability to meet the demands of unskilled work. Rather, the record contains plaintiff's report that he can read and understand English, and can write more than his name in English (Tr. 158); his report that

8

his most recent job, as a shipping and receiving supervisor in a factory, required him to type orders and to complete reports (Tr. 160, 178); his report that he needs glasses "to read and write" (Tr. 206); his report that his ability to work was only compromised by his physical limitations (Tr. 37, 159, 205); and, his verification that he completed the agency questionnaires himself, with no apparent confusion as to what information the items on the questionnaires were seeking. (Tr. 172) Moreover, the regulations establish that "[w]hile illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g). There is simply no evidence to support plaintiff's assertion of significant difficulties with reading, comprehending, or remembering the simple information that might be conveyed in job instructions or other writings which might be provided in the course of performing unskilled work. Cf. Deaton v. Comm'r of Soc. Sec., 315 Fed. Appx. 595, *4-6 (6th Cir. Mar. 5, 2009) ("[T]here is no evidence here that Deaton 'cannot read or write a simple message such as instructions or inventory lists.' 20 C.F.R. § 416.964(b)(1). To the contrary, she herself stated several times in her application materials that she can read and write."). Therefore, the undersigned concludes that any error by the ALJ in failing to make mention of plaintiff's school-age reading difficulties is harmless.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 29th day of April, 2016.

    s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE